# EXHIBIT D

DATE:             September 28, 2003.

TIME:             3:07 a.m.

PLACE:            Area B2, Detective Room.

PARTICIPANTS:

                  Detective O'Brien

                  Officer Steve Canto

                  Officer John Harbor

                  Earl Charley


DET. O'BRIEN:     It's September 28, 3:07 a.m.  I'm speaking to a
                  Mr. Earl Charley from 32 Bowdoin Ave, apartment
                  21.  Mr. Charley, you've been placed under arrest.
                  What are the charges?

OFF. HARBOR:      Possession of a firearm.

DET. O'BRIEN:     Possession of a firearm.

OFF. HARBOR:      And possession  - with intent to distribute Class
                  B in a school zone.

DET. O'BRIEN:     School zone violation with Marijuana?

OFF. HARBOR:      Yes.

DET. O'BRIEN:     And  -

OFF. HARBOR:      Possession of ammo.

DET. O'BRIEN:     Possession of ammunition.

OFF. HARBOR:      With an obliterated serial number.

DET. O'BRIEN:     And other related charges.

                  With me is Patrolman John Harbor and Steve Canto

                                    1

the arresting officers.

Mr. Charley, stated he would speak to this

Detective in the presence of these Officers.

Mr. Charley, I want you to look at this here.

This is the Boston Police Department Miranda

warning form.

Before we ask you any questions, you must

understand your rights.

You have the right to remain silent.  Anything you

say can be used against you in a court of law or

other proceedings.

You have a right to talk to a lawyer for advice

before we ask you any questions and to have him or

her with you during that questioning.  If you

cannot afford a lawyer and you want one, a lawyer

will be provided for you by the Commonwealth

without cost to you.

If you decide to answer questions now without a

lawyer present you will still have the right to

stop answering at any time until you talk to a

lawyer.  So do you understand your rights, your

Miranda, rights as provided to you now?

EARL CHARLEY:     Yeah.  But didn't  - didn't the Sergeant say if  -
                  if I take the blame everybody  -

DET. O'BRIEN:     I talked to the Sergeant.  The Sergeant said this,
                  we want the truth.  We don't want you  -

2

EARL CHARLEY:   I  -

DET. O'BRIEN:   I understand.  This is the deal.

EARL CHARLEY:   If he's lying there's no deal.

DET. O'BRIEN:   No.  He's not lying.  This is the deal.  I'm going
to lay it out for you.  I'm not going to lie to
you.  He told me we have to know what the truth
is.  If it's your firearm, it's your firearm.
Fine.

If it is your firearm then the other people in the
car are not going to be charged with a crime if
it's not their firearm and they'll be released.

EARL CHARLEY:   That's what  -

DET. O'BRIEN:   But I don't want you to say, the only reason I
said it was my firearm was to get the other three
people off.  If it's your firearm, it's yours.  If
it's not, if it's your sisters or Anthony's or
whatever, I don't want you to lie.

EARL CHARLEY:   Why you keep saying my sister?

DET. O'BRIEN:   I don't know.  Was it your sister in the car?

EARL CHARLEY:   That's what we  -

DET. O'BRIEN:   I don't know who said that.  The other two
females.  I don't, want  - what I want is the
truth.  If it's your firearm, yes.  Then they're
not going to be charged with it.  Why would we
charge?

EARL CHARLEY:   That's what they said downstairs.

3

DET. O'BRIEN:  Okay.  Well, he was just trying to tell you but we don't want to put words in your mouth.  We don't want to tell you.  You only know if it's your gun.  If it's not your gun and somebody else put it in the glove compartment then -- you know what I'm saying?  But here  -

EARL CHARLEY:  It goes to the owner of the car any ways. So why are we going?

DET. O'BRIEN:  Well, I have to a  - well, like I said.  If you want to talk to us now and you agree to it.  All right.  I want you to just read over these.  It will be very quick.

It's just going to say, I, Earl Charley, understand that  - I have been read and understand the above rights explained to me by, and my name is Detective Steven O'Brien.

EARL CHARLEY:  No.  Here's the catch twenty-two.  If I don't want to talk to you guys now, you'll let me go.

DET. O'BRIEN:  Put it this way, if you don't talk to us and there's a firearm in the car, then we'll have to do other investigative work like fingerprints  -

EARL CHARLEY:  I had already  - I already told you that.  I told you that.

DET. O'BRIEN:  Right.  And  - and like I said, if it's your firearm we'll get this recorded.  You'll be arrested for it.  Nobody else will be charged with

4

the firearm.

EARL CHARLEY:     Mm-hm.

DET. O'BRIEN:     All right?  That's how it goes.  If you don't talk
                  to us which is your right  -

EARL CHARLEY:     Mm-hm.

DET. O'BRIEN:     Then we're with a situation where it might not be
                  your firearm.  It could be somebody else's.  We'll
                  have to fingerprint it and go through some other
                  things to determine whose gun it is.  And that's a
                  determination for the Sergeant to make if he's
                  going to take anybody.  I understand what you're
                  saying.

EARL CHARLEY:     Yeah.

DET. O'BRIEN:     He already told me he won't.  Probably  - right?
                  And if you said it's your gun, then they're not
                  going to be charged for it.

EARL CHARLEY:     Okay.  Then go ahead

DET. O'BRIEN:     All right, but I don't want you to say something
                  that's not true.  All right?  I want you to look
                  this over one more time.  These are your rights
                  and sign your name here if you understand them.
                  I know you've been arrested before.  I checked
                  your record and that you probably read these
                  rights a hundred times but I have to do it again
                  today.

EARL CHARLEY:     All right.  I haven't really read these things.

5

DET. O'BRIEN:    You haven't read the Miranda Rights?  But you've
                 been told.  You have a right to read them.  And
                 what I want you to do is after you read each one
                 just put your initials that you understand each
                 right that I've read to you.
                 You have the right to remain silent.  If you
                 understand it, you can put your initials.
                 (Pause.)

EARL CHARLEY:    How long would it take to get a lawyer here?

DET. O'BRIEN:    I don't think we could get a lawyer here.  I think
                 you just go to court.

EARL CHARLEY:    Because -

DET. O'BRIEN:    And one would be appointed.

EARL CHARLEY:    (Unintelligible)

DET. O'BRIEN:    No.  I'm just saying.  I'm just saying.  No, we'll
                 stop -

EARL CHARLEY:    (Unintelligible)

DET. O'BRIEN:    - we're not going to question you.  You can try
                 to get one here.  I never had the -

EARL CHARLEY:    Yeah.  But then them three don't go home.

DET. O'BRIEN:    I'm trying to tell you if you want to speak to us
                 -- I can't tell you.  I don't know.  You could get
                 a - maybe if you called you could get a lawyer.
                 I don't know if you have - know a lawyer.  You
                 can get him here.  I don't know how long it would
                 take.  I'm just telling you right now we're

                                    6

offering you --

EARL CHARLEY:      Do you?  Do you all even have a lawyer?

DET. O'BRIEN:      Do you?

EARL CHARLEY:      Do you all, have a lawyer?

DET. O'BRIEN:      We don't have a lawyer.  We don't provide them.
                   The Commonwealth has it.  You can call.  If you
                   know somebody you  - I don't know the numbers to
                   call.  You've been  - you've been arrested several
                   times.  You might have a lawyer.

EARL CHARLEY:      Whose been arrested several times?  I haven't been
                   arrested several times.

DET. O'BRIEN:      What?

EARL CHARLEY:      I haven't been arrested several times.

DET. O'BRIEN:      How many  -

EARL CHARLEY:      You might see a record but I ain't been arrested
                   and half of those ain't even mine.

DET. O'BRIEN:      All right, have you been arrested before?

EARL CHARLEY:      I've been arrested before.

DET. O'BRIEN:      And you've been  - and you've been with a lawyer
                   before?  You might want to call a lawyer that
                   you've dealt with before.  It's up to you.
                   I'm just saying you can stop talking to us and you
                   can say I'm not going to talk to you until I get a
                   lawyer.  Fine.

EARL CHARLEY:      Okay.

DET. O'BRIEN:      And we'll stop right now.

7

EARL CHARLEY:    All right, let's just  -

DET. O'BRIEN:    It's up to you.

EARL CHARLEY:    Let's just get this over with, get them out of
                 here.  Bail bondsman around?

DET. O'BRIEN:    They should be in.  It's Sunday morning, they
                 should be in, yes.  The last thing is because it
                 is a weekend I have to do this.  This is to waiver
                 a (unintelligible) in that you're going to talk to
                 us knowing that you're not going to court tomorrow
                 morning because it's a Sunday or today, this
                 morning.  You're going Monday and this is a  - if
                 you just want to read this over and just sign it
                 here once.

                 And it's just basically that you do know your
                 rights and that you'll be going to court on
                 Monday.  And that's called a waiver of proctor
                 arraignment.  I'll have you guys sign here as
                 witnesses, okay?  Sign your name?

                 Read it.  Sign your name there.  He's, witnessing.
                 (Unintelligible)

                 This right here.

EARL CHARLEY:    I see.

DET. O'BRIEN:    Okay.  Mr. Charley you signed these  - both these
                 waivers.  I'm going to just talk to you about what
                 happened tonight.  Can you tell me, tonight you
                 went out and tell me prior to you getting stopped

                                        8

by the officers what were you doing?

EARL CHARLEY:    I was at a party at ah, how you call it,

Flanagan's?

DET. O'BRIEN:    Pat Flanagan's and what kind of party was it?

EARL CHARLEY:    It was a birthday party.

DET. O'BRIEN:    What for somebody you knew?

EARL CHARLEY:    Yeah.

DET. O'BRIEN:    Okay.  It was a birthday party for someone you

knew and you left that party and then what

happened?

EARL CHARLEY:    I got pulled over.

DET. O'BRIEN:    Do you know why you got pulled over?

EARL CHARLEY:    They said I made a u-turn.

DET. O'BRIEN:    Did you make a u-turn?

EARL CHARLEY:    No.

DET. O'BRIEN:    You did not make a u-turn?

EARL CHARLEY:    No.

DET. O'BRIEN:    Where were you parked on Huntington Ave?

EARL CHARLEY:    Um, right up from Flanagan's.

DET. O'BRIEN:    Right up from Flanagan's?

EARL CHARLEY:    Right past that Detective's car.

DET. O'BRIEN:    Okay.  And which way were you facing, toward

Flanagan's or  -

EARL CHARLEY:    Towards Brigham and Women's Hospital.

DET. O'BRIEN:    Towards Brigham and Women's?

EARL CHARLEY:    Mm-hm.

9

DET. O'BRIEN:   Okay.  So you weren't parked on the opposite side?

EARL CHARLEY:   No.

DET. O'BRIEN:   Okay.  So you're saying that you never made a
                u-turn?

EARL CHARLEY:   That's what I'm saying.

DET. O'BRIEN:   Okay.  All right so there was no illegal u-turn
                and you got pulled over, and what happened next?

EARL CHARLEY:   He got us out of the car.  He searched the car.
                Found some marijuana.  Put me under arrest.

DET. O'BRIEN:   And did they fire  - did they find a firearm in
                the car?

EARL CHARLEY:   They found it and I mean, I guess they brought the
                car here.

DET. O'BRIEN:   Yeah.  But did they re  -

EARL CHARLEY:   I thought they recovered when I (unintelligible).

DET. O'BRIEN:   Okay.

EARL CHARLEY:   They didn't tell me until they got here.

DET. O'BRIEN:   All right.  So they told you that they recovered a
                firearm in the car?

EARL CHARLEY:   Yes.

DET. O'BRIEN:   Now is that your firearm?

EARL CHARLEY:   Yeah.

DET. O'BRIEN:   It's your firearm?

EARL CHARLEY:   Yeah.

DET. O'BRIEN:   Where did you place that firearm in the car?  Was
                it underneath the seat?  Was it in the glovey?

10

Was it in the back seat?  Where was it?  It's your
firearm.  You placed it in the car.

EARL CHARLEY:    They said it came out of the glove compartment.
That's where it came out of, the glove
compartment.

DET. O'BRIEN:    Did you put it in the glove compartment?

EARL CHARLEY:    Yeah.  I put it in there.

DET. O'BRIEN:    When did you put it in there?  I mean, was it in
- did the other people in the car know that there
was a firearm in the car, Anthony or the two
females?

EARL CHARLEY:    None of them.

DET. O'BRIEN:    None of them knew there was a firearm in the car?

EARL CHARLEY:    Nope.

DET. O'BRIEN:    Did they ever see the firearm, the other three
people?

EARL CHARLEY:    Nope.

DET. O'BRIEN:    No, okay.  The firearm, when you placed it into
the glove compartment was prior to you picking
them up?

EARL CHARLEY:    Yeah.

DET. O'BRIEN:    Okay.  Where did you get the firearm?

EARL CHARLEY:    A junkie.

DET. O'BRIEN:    You brought it off a junkie or you stole it off a
junkie?  I mean  -

EARL CHARLEY:    Bought it off a junkie, a junkie.  He sold it to

me.

DET. O'BRIEN:      So a junkie sold it to you?

EARL CHARLEY:      Yeah.

DET. O'BRIEN:      And how much did you pay for it?

EARL CHARLEY:      A couple of bags of weed.

DET. O'BRIEN:      A couple of bags of weed?

EARL CHARLEY:      Mm-hm.

DET. O'BRIEN:      Okay.  So you gave some junkie a couple of bags of
                   weed and what type of gun is it?

EARL CHARLEY:      A nine.

DET. O'BRIEN:      A nine and what color is the nine?

EARL CHARLEY:      Black.

DET. O'BRIEN:      Black.  Was it loaded?

EARL CHARLEY:      It wasn't loaded.

DET. O'BRIEN:      It wasn't loaded?  Okay.  All right.

EARL CHARLEY:      There was none in the chamber.

DET. O'BRIEN:      Okay.  None in the chamber, okay.  And when you
                   received this firearm, how long have you had this
                   firearm?  I mean, you got it off a junkie, how
                   long ago?

EARL CHARLEY:      A week or so.

DET. O'BRIEN:      You've had it for about a week and where  - did
                   you know this junkie?

EARL CHARLEY:      Nope.

DET. O'BRIEN:      No?  And what part of  - did you get it in the
                   city or outside the city?  I mean  -

                              12

EARL CHARLEY:   In the city.

DET. O'BRIEN:   I mean, not in Mission Hill?

EARL CHARLEY:   No.

DET. O'BRIEN:   In Dorchester or South  -

EARL CHARLEY:   Dorchester.

DET. O'BRIEN:   Dorchester?  Okay.  And you got it for a week so
                tonight you're going to a party.  It's already in
                the glove compartment before you pick up anybody?

EARL CHARLEY:   Yeah.

DET. O'BRIEN:   So Anthony, your brother, never touched it?

EARL CHARLEY:   Nope.

DET. O'BRIEN:   His fingerprints won't be on it?

EARL CHARLEY:   Nope.

DET. O'BRIEN:   None of the girls  -

EARL CHARLEY:   Nope.

DET. O'BRIEN:    - touched it?

EARL CHARLEY:   Nope.

DET. O'BRIEN:   So the only  - if there were prints recovered
                there should only be yours?

EARL CHARLEY:   Yeah.

DET. O'BRIEN:   And maybe this junkie?

EARL CHARLEY:   Yeah.

DET. O'BRIEN:   Okay.  So if this firearm comes back to any other
                shootings you've never used the shooter?

EARL CHARLEY:   I didn't use it.

DET. O'BRIEN:   Okay.  So if this comes back to a year ago

                                13

shooting it's obviously you just bought it?

EARL CHARLEY:  Whatever it comes back, I don't care.

DET. O'BRIEN:  All right.  Why do you find a need to have a gun?

EARL CHARLEY:  I didn't find a need.  It was just there cheap.

DET. O'BRIEN:  Cheap.  Did you bring the gun into Pat Flanagan's with you or  -

EARL CHARLEY:  No, I did not.

DET. O'BRIEN:  Okay.  I just want to know.  All right, how long were you in Pat Flanagan's for the party?

EARL CHARLEY:  A couple of hours, just for three hours.

DET. O'BRIEN:  Oh, you were in there for three hours?

EARL CHARLEY:  Yeah.

DET. O'BRIEN:  Okay.  All right so if I told you that I know your brother Anthony right?

EARL CHARLEY:  Mm-hm.

DET. O'BRIEN:  And I tried to talk to him prior to leaving to leaving, would he know that I was there?

EARL CHARLEY:  I don't know.

DET. O'BRIEN:  Okay.  He never told you that somebody tried to talk to him, a police officer?

EARL CHARLEY:  No.

DET. O'BRIEN:  Okay.  Would  - would you be  - you still say you never made a u-turn.  If I told you I saw you made that u-turn and saw where you parked  -

EARL CHARLEY:  Mm-hm.

DET. O'BRIEN:  I'd be wrong too?

14

EARL CHARLEY:    You sure will.

DET. O'BRIEN:    Okay.  I just want to make sure.  So you bought
                 this firearm, this 9-millimeter which didn't have
                 one in the chamber, you bought it a week ago?

EARL CHARLEY:    Mm-hm.

DET. O'BRIEN:    You have to speak up.  Yes or no.

EARL CHARLEY:    Yeah.

DET. O'BRIEN:    All right and who did you buy it off again?

EARL CHARLEY:    A junkie.

DET. O'BRIEN:    A junkie.  And it was for how many bags of weed?

EARL CHARLEY:    I said a couple of bags.

DET. O'BRIEN:    A couple of bags?  Okay.  And you don't know who
                 this junkie is?

EARL CHARLEY:    I didn't know him.

DET. O'BRIEN:    Just a junkie?

EARL CHARLEY:    Just a junkie.

DET. O'BRIEN:    And you never used it?

EARL CHARLEY:    No.

DET. O'BRIEN:    And in the week that you've had this firearm,
                 where have you been keeping it, in the car?

EARL CHARLEY:    Yeah.  In the car.

DET. O'BRIEN:    Okay.  And you've never threatened anybody with
                 it?

EARL CHARLEY:    No.

DET. O'BRIEN:    No?  Okay.  And that car is registered to you?

EARL CHARLEY:    Yep.

15

DET. O'BRIEN:     Owned by you?

EARL CHARLEY:     Yep.

DET. O'BRIEN:     Used by you?

EARL CHARLEY:     Yep.

DET. O'BRIEN:     You let Anthony use the car?

EARL CHARLEY:     He don't know how to drive.

DET. O'BRIEN:     He doesn't know hot to drive?  You don't let the
                  girls drive the car?

EARL CHARLEY:     Nope.

DET. O'BRIEN:     No?  So the only person that drives that car is
                  you?

EARL CHARLEY:     I don't know.  My buddies used to drive it.

DET. O'BRIEN:     You don't know?

EARL CHARLEY:     My buddies usually drive it.  I let people use my
                  car.

DET. O'BRIEN:     So you let people use the car with the firearm in
                  it?  I mean, you had it for a week.  This week
                  you've ha  -

EARL CHARLEY:     No.  Nobody used it this week.

DET. O'BRIEN:     Nobody used it this week.  So since you had the
                  gun in the glove compartment nobody but you has
                  driven that car?

EARL CHARLEY:     Yeah.

DET. O'BRIEN:     Okay.

EARL CHARLEY:     It ain't been -- it ain't been driven much.

DET. O'BRIEN:     Okay.  Do you want to say anything about the other

16

three people in the car as to they -

EARL CHARLEY:   They had nothing to do with it.  They had nothing
                to do with the nine.

DET. O'BRIEN:   They had nothing to do with the nine?

EARL CHARLEY:   No.

DET. O'BRIEN:   All right like I said, we're not promising you
                anything but that -- is that the truth?

EARL CHARLEY:   What do you mean you're not promising me nothing?

DET. O'BRIEN:   I'm not promising you a deal.

EARL CHARLEY:   I'm saying now Charlie -

DET. O'BRIEN:   No.

EARL CHARLEY:    - let them three go.

DET. O'BRIEN:   No.  I'm telling you, if you're telling me that's
                your firearm -

EARL CHARLEY:   Okay.  That's my firearm.

DET. O'BRIEN:    - we're not going to charge  -

EARL CHARLEY:   So don't charge them with it.

DET. O'BRIEN:   But I don't want you to lie.

EARL CHARLEY:   No.  I'm not lying.

DET. O'BRIEN:   You're not lying?

EARL CHARLEY:   No.

DET. O'BRIEN:   Okay.

EARL CHARLEY:   That's right.  I ain't lying.

DET. O'BRIEN:   Okay.

OFF. HARBOR:    What about the drugs in the car?

EARL CHARLEY:   The who?

```
DET. O'BRIEN:    The drugs in the car.

OFF. HARBOR:     The drugs in the car, are they your drugs?

DET. O'BRIEN:    The drugs that they recovered from the car, the
                 marijuana?

EARL CHARLEY:    Give it  - get them off.

OFF. HARBOR:     (Unintelligible)

DET. O'BRIEN:    No.  We have  - we have to know.

EARL CHARLEY:    It's my  - it's my stuff.

DET. O'BRIEN:    And where did you put it in the car?

EARL CHARLEY:    It's in the glove compartment are rest.

DET. O'BRIEN:    The armrest?

OFF. HARBOR:     How many um, what were  - what kind of drugs you
                 say?

EARL CHARLEY:    It's marijuana.

OFF. HARBOR:     How many bags?

DET. O'BRIEN:    Do you know?  You don't have to be exact but two,
                 more than two?  Ten?

EARL CHARLEY:    More than two.

OFF. HARBOR:     More than two?  Now earlier you said that the
                 firearm didn't have one in the chamber.  Did it
                 have any bullets in the firearm?

EARL CHARLEY:    In the  - in the clip, yeah.

OFF. HARBOR:     And how many was that?

EARL CHARLEY:    (No response.)

DET. O'BRIEN:    All right, so the weed in the car, did they know
                 about the weed in the car, the other three?
```

18

EARL CHARLEY:   Nope.

DET. O'BRIEN:   Did you smoke before going there?

EARL CHARLEY:   I don't smoke reefer.

DET. O'BRIEN:   You don't smoke, reefer?  Were you selling it then?

EARL CHARLEY:   No.  I wasn't selling the reefer.

DET. O'BRIEN:   Why did you have, reefer in the car?

EARL CHARLEY:   I'm not selling it.

DET. O'BRIEN:   Well, you're not selling it but you don't smoke it?

EARL CHARLEY:   I don't smoke it.

DET. O'BRIEN:   Like Bill Clinton.

EARL CHARLEY:   Yeah.

DET. O'BRIEN:   You don't inhale.

EARL CHARLEY:   Yeah.  One of those.

DET. O'BRIEN:   Okay.  Well, I'm going to talk to Anthony, all right?  I'll be talking to him and like I said, if this is the truth and it's your firearms  -

EARL CHARLEY:   All right.

DET. O'BRIEN:   We're not going to charge somebody with the firearm if it's not their's.

EARL CHARLEY:   It's mine.  They'd probably be nervous to say it's mine, but it's mine.

DET. O'BRIEN:   Well, I'm hoping if you're telling me the truth then they can  -

EARL CHARLEY:   They might be nervous to say it but  -

19

DET. O'BRIEN:    No.  The rest of them will say one thing if it's

                 the same -- you're telling me they didn't know

                 about it, then they don't know about it.

EARL CHARLEY:    Okay.

DET. O'BRIEN:    Okay?  But I don't want you to take the hit if

                 it's not yours and it's Anthony or somebody

                 else's.

EARL CHARLEY:    Okay.

DET. O'BRIEN:    All right?  Okay.  Now what time is it now?  The

                 clock there, it's 3:25.  I'm going to conclude

                 this interview with Mr. Earl Charley.  Again

                 Mr. Charley you understand your rights?

EARL CHARLEY:    Mm-hm.

DET. O'BRIEN:    Right?  And like I said all I wanted was the

                 truth.  That was the truth you told us?

EARL CHARLEY:    That's right.

DET. O'BRIEN:    You have to say yes.

EARL CHARLEY:    Yes.

DET. O'BRIEN:    Okay.  We're going to conclude right now.

EARL CHARLEY:    Tell Mr. Machere he can come down now.

DET. O'BRIEN:    Mr. Machere?

EARL CHARLEY:    Yeah.

DET. O'BRIEN:    He's been notified.  I know he has.  All right.

                 You know Mr. Machere?  Earl.  I just want to say

                 one thing.  Like I said, all we wanted was the

                 truth.  It that's the truth that it's your

                     firearm, those people are not going to be charged.

                     Okay?

EARL CHARLEY:        Yes.

DET. O'BRIEN:        Thank you.  And that concludes the interview.

                     (Whereupon, the interview was concluded.)