```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
         V.                 ) CRIMINAL NO. 03-10387-DPW
                            )
EARL CHARLEY, JR.           )
```

**OPPOSITION TO DEFENDANT'S SUPPLEMENTAL
<u>MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS</u>**

The United States submits this Opposition to the supplemental memorandum of defendant Earl Charley ("Charley") submitted in support of his motion to suppress.

Any fair reading of Charley's post-arrest interview with Boston Police Detective Stephen O'Brien ("Detective O'Brien") plainly establishes that Charley fully understood his Miranda rights, did not invoke his right to counsel, and knowingly chose to proceed with the interview after being apprised of and understanding his rights.

As is described in the post-arrest interview, at the beginning of the interview Detective O'Brien presented Charley with a Boston Police Department "Miranda Warning" form and explained to Charley each of his rights, including his right to counsel.  See transcript of Charley's post-arrest interview ("Charley Transcript"), attached as Exhibit 2 to the government's Opposition To Defendant's Motion To Suppress, at p. 2.  See also Boston Police Miranda Warning ("Miranda Warning"), attached hereto as Exhibit A. Charley explicitly acknowledged that he understood his rights.  Charley Transcript at p. 2.  Detective

O'Brien then directed Charley to read his rights from the Miranda Warning form. Id. at p. 4. Detective O'Brien further asked Charley to look over the Miranda Warning form "one more time" and to sign the form if he understood his rights. Id. at p. 5. Charley then signed the Miranda Warning form and initialed each right, indicating that he understood each right, including his right to counsel. Id. at p. 6; see Exhibit A.

After Charley acknowledged that he had been arrested before (and, therefore, was familiar with what was occurring, including his rights), Detective O'Brien again told Charley that he could stop the interview and choose not to talk without a lawyer. (Detective O'Brien: "It's up to you. I'm just saying you can stop talking to us and you can say I'm not going to talk to you until I get a lawyer. Fine.") Charley Transcript at p. 7. Charley then explicitly chose to proceed with the interview. (Charley: "Let's just get this over with, get them out of here. Bail bondsman around?") Id. at p. 8. Detective O'Brien then presented Charley with a Boston Police Department "Waiver Of Prompt Arraignment" form, explained the form to Charley, and Charley signed the form. The "Waiver Of Prompt Arraignment" form, attached hereto as Exhibit B, includes the statements: "I have been informed of my Miranda rights and "I understand each of these rights, and having those rights in mind, I...wish to speak to the police." See Exhibit B. Only then did the interview

proceed.

Given the facts described above, and Charley's extensive experience and sophistication in dealing with law enforcement and the criminal justice system[1], his assertions that he invoked his right to counsel, did not understand his right to counsel, or was somehow coerced into not invoking his right to counsel are without merit.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>By:   /s/CHRISTOPHER F. BATOR
>      Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, CHRISTOPHER F. BATOR, certify that I have served a copy of the above upon Leo T. Sorokin, Esq., Federal Defender Office, 408 Atlantic Avenue, 3rd Floor, Boston, MA 02110 by e-file notice and first class mail.

>/s/CHRISTOPHER F. BATOR
>Assistant U.S. Attorney
>
>Date: August 30, 2004

---

[1] Charley's long criminal record is attached to the government's Opposition to Charley's Motion to Suppress at Exhibit 3.

en