UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.                                    )   CRIMINAL NO. 03-10387-DPW<br>)<br>EARL CHARLEY                       ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Earl Charley, respectfully submits this Sentencing Memorandum to assist the Court in determining an appropriate sentence in this case. Defendant contends that the Court should not count a 1988 escape disposition as a predicate conviction for purposes of the Armed Career Criminal Act (ACCA) and thus defendant should not be subject to the fifteen year mandatory minimum sentence that would apply under the ACCA. The Court should instead find that the advisory guideline sentencing range is 70-87 months.

Defendant further submits that the factors in 18 U.S.C. 3553(a) indicate that a sentence of 48 months imprisonment is sufficient, but not greater than necessary, to effectuate the goals of the statute.

I.  THE GUILTY FILED DISPOSITION IN WEST ROXBURY DISTRICT COURT SHOULD NOT BE COUNTED AS AN ARMED CAREER CRIMINAL PREDICATE.

The Probation Department has suggested that defendant be deemed an Armed Career Criminal because he has three prior convictions for violent felonies. See PSR ¶35(a). All of the three predicate convictions cited by the Probation Department

stem from conduct in the mid-eighties. One of the three prior convictions is a 1988 guilty filed disposition from the West Roxbury District Court in a complaint alleging that defendant was absent without leave from a pre-release center.

Defendant has submitted a lengthy objection to the Probation Department arguing that the disposition should not be counted. In sum, defendant contends that a guilty filed disposition where no sentence is imposed is not appealable through the Massachusetts appellate system, is thus not final, and therefore does not constitute a final judgment necessary to support a "conviction" under the ACCA. United States v. Tavares, 93 F.3d 10, 13 & n.3 (1st Cir. 1997)(noting Chief Judge Young's determination that guilty filed dispositions were not predicates for the ACCA). See also Griffiths v. INS, 243 F.3d 45 (1st Cir. 2001)(guilty filed disposition in Massachusetts is not a final judgment or equivalent to sentencing; merely suspends, for as long as the case remains on file, defendant's right to appeal alleged error in the proceeding). Massachusetts state courts have repeatedly affirmed the unstable nature of a guilty filed disposition as a matter of state law. Commonwealth v. John Dowdican's Bail 115 Mass. 133, 136 (1874)(placing a case on file "is a mere suspending of the active proceedings"); Commonwealth v. Marinucci Bros., 354 Mass. 743 (1968)(guilty filed disposition is not an "order" from which a defendant could take an appeal); Commonwealth v. Brandano, 359 Mass. 332, 336 (1971)(a guilty

filed "may be brought forward at any time" by the Commonwealth); Commonwealth v. Bianco, 390 Mass. 254, 257 (Mass. 1983)(filing of a charge "is not a final judgment" or "equivalent to sentencing").

A guilty disposition possesses even less finality where, as here, it was rendered in the first tier of Massachusetts's antiquated two-tier system that existed prior the abolition of de novo trials in 1994 because his case could, even now, be brought forward for sentencing at which time he may then appeal to the jury-of-six de novo session for a jury trial. In the event of such an appeal de novo, "the judgment of the bench trial [would be] 'wiped out'". Justices of the Boston Municipal Court v. Lydon, 466 U.S. 294, 296 (1984), quoting Mann v. Commonwealth, 359 Mass. 661, 666, 271 N.E.2d 331 (1971). This additional lack of finality renders a guilty filed disposition utterly lacking in the indicia of reliability sufficient to support the draconian sentencing consequences of the ACCA.

With one exception, the Probation Department's response to defendant's objection is largely inapposite. The response cites definitions lifted from the criminal history chapter of the Sentencing Guidelines as support for scoring a guilty filed disposition for purposes of criminal history. What the Probation Department ignores, however, is a fundamental difference between criminal history scoring for guidelines purposes and convictions for ACCA purposes. U.S.S.G. §4A1.1 defines sentences as the

3

operative concept behind scoring under the guidelines and, by way of additional definitions and instructions, brings within that concept of "sentence" diversionary dispositions which may include a guilty filed disposition.  See U.S.S.G. §4A1.2.  Moreover, the determination of what constitutes a countable disposition under the guidelines derives from <u>federal law</u> via the sentencing guidelines themselves.

The ACCA, however, specifies that it is <u>convictions</u> that are to be counted and, unlike guidelines scoring, mandates that "what constitutes a conviction . . . shall be determined in accordance with the <u>law of the jurisdiction</u> in which the proceedings were held."  18 U.S.C. § 921 (a)(20)(emphasis supplied).  Consequently, defendant submits that the Probation Department's response, although lengthy and detailed as to sentencing guidelines issues, offers little relevant guidance in determining whether such a disposition constitutes a predicate conviction for purposes of the ACCA.

The Probation department cites <u>United States v. Hines</u>, 802 F.Supp. 559, 571-73 (D.Mass. 1992), in support of its position.  Defendant concedes that Judge Fuste came to a contrary conclusion concerning specific types of guilty filed dispositions.  Defendant respectfully submits that Judge Fuste erred in so concluding; the recognition by Judge Fuste of the informal nature and procedure of first tier pleas that, by his own admission may include constitutional defects, <u>see</u> <u>id.</u> at 563-64 is incompatible

4

with the necessity and gravity of a conviction that potentially supports a fifteen-year mandatory minimum sentence. Defendant submits that Judge Young, an experienced Massachusetts Superior Court judge prior to taking the federal bench, better understood the infirmities of such a disposition when he concluded that such dispositions could not be predicates for the ACCA.

In any event, even Judge Fuste required that, in order for a first tier disposition to be valid for purposes of the ACCA, there must be evidence that notice of the right to appeal was given at the time of the disposition and that, if no appeal was taken, evidence that the defendant was notified of the loss of his right to appeal. Id. at 563-64, citing Commonwealth v. Duquette, 386 Mass. 834 (1982). Here, there is no evidence that the so-called Duquette waiver was explained or signed by defendant. Consequently, even should this Court decide to follow Hines, the West Roxbury disposition should not be counted for purposes of the ACCA.

For the reasons stated in defendant's objection to the Presentence Report, as well as the reasons state above, defendant submits that this Court should not count the guilty-filed escape conviction for purposes of the ACCA. Consequently, defendant's base offense level is 23 and the correct guideline sentencing range is 70-87 months.

II. A SENTENCE OF FORTY-EIGHT (48) MONTHS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO EFFECTUATE THE GOALS OF SENTENCING.

Under the remedial advisory guidelines scheme created by United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 756-769 (2005), sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a) keeping in mind the primary directive that sentencing courts "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Id. Here, those factors dictate a sentence of 48 months imprisonment.

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

   **(a) Nature and Circumstances of Offense**

   There is not doubt that possession of a weapon by one previously convicted of felonies, as Charley has, is a serious offense. Notwithstanding the seriousness of this behavior, it should be noted that the weapon was found in the glove compartment of the car Charley was operating on an occasion when the defendant and his brother were out socially. Unlike many cases before this Court involving weapons, there is no indication that the gun had been recently fired or brandished, or of an intent to use the gun in further crime. Moreover, the circumstances of the offense should be put in context with Charley's attempt to turn his life around by working regularly and steadily to support his four children and their mother.

   **(b) History and Characteristics of Charley**

Charley is a 42 year-old man who has endured a demonstrated and significant struggle with life on the streets. Fortunately, as the PSR and those close to him attest, Charley has remarkable drive and responsibility to his family and has shown a capacity for hard work.

Charley has a strong support system in his close-knit family. As letters (attached hereto as Exhibit A) from his family consistently demonstrate, Charley's primary goal has been to provide both financial and psychological support for his children through hard work.

The story of Charley's significant other, Valerie Ricker, and the couple's children, is especially poignant. Ricker has struggled with substance abuse and disability for many years. She depicts Charley as "the love of my life" and a person on whom she can always count for financial and emotional support. She describes a close bond between Charley and all of their children. She reports being particularly in need of his support now: she has recently been diagnosed with Rheumatoid Arthritis, which limits her ability to meaningfully work, while at the same time is coming to the end of the AFDC benefits on which she and her family have been surviving. She does not presently have a plan for supporting herself and their two youngest children, now aged eight and four. She reports that she needs Charley home so that they can successfully raise their children.

The letters, testimonials from his significant other, as well as Charley's demonstrated work history when in society, all strongly indicate that Charley will not be at risk to recidivate.

Given these positive prognostic signs and the nature of the offense at issue, a sentence of 48 months is sufficient but not greater than necessary to effectuate the sentencing goals of 18 U.S.C. § 3553(a).

2.  **The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

    **(A)  to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The offense conduct here is serious and merits significant punishment.  48 months in prison is significant punishment and far better reflects the seriousness of defendant's conduct than does the 70-87 month guideline sentence range given Charley's limited recent criminal history.  This is particularly true given the nature and circumstances of the time Charley has spent awaiting trial, time during which has been particularly difficult for him because of his need to be productive and the lack of productive outlets while in pretrial detention.

Similarly, it cannot be seriously argued that, given the conduct here in conjunction with Charley's circumstances and otherwise recently crime-free life, a sentence of 48 months is more than enough to promote respect for the law, both specifically as to Charley and generally as to the public at large.  Notwithstanding his facially serious record of convictions, Charley has served time for a conviction only once in the late eighties.  The proposed sentence will keep him incarcerated for another two years in federal prison as a result

of the monumental lack of judgment in possessing a weapon.  The public's right to just punishment for the offense is vindicated by Charley's conviction and punishment by a such a significant sentence.

    **(B)  to afford adequate deterrence to criminal conduct**

Charley's efforts to build and maintain a productive lifestyle and provide for his children have been wrecked by his decision to have a weapon in his car.  Similarly, the lives of his close family have been thrown into turmoil.  There can be little doubt that the sentencing and incarceration he will endure provide overwhelming deterrence to any thought of relapse in the future.

    **(C)  to protect the public from further crimes of the defendant**

Admittedly, Charley's record, at first blush, appears serious and similar enough to the conduct at issue to raise public protection concerns.  A close reading of Charley's record, however, and its connection to the excesses of an inner city youth, provides some mitigation as to the outwardly serious nature of his criminal record.  All of the arguably violent conduct had ended by 1984, over twenty years ago.  In more recent years, the sole criminal conviction was for possession of marijuana, an offense for which he received a short suspended sentence.

In any event, Charley's demonstrated commitment to get back to providing for his children strongly suggest a complete

cessation of his involvement in criminal activity.

> **(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Should the Court impose a 48-month sentence, the time remaining - more than two years - will be more than ample time for Charley to take advantage of work training programs available.  Beyond that, further incarceration does nothing to address the issues of the draw of inner city life that has plagued Charley.  Conversely, two-year term of supervised release wit the tailored conditions and intensive supervision will greatly assist by ensuring that he stay out of further difficulties while providing for his children.  Consequently, a sentence with an intensive regimen of supervision better serves the correctional goal while still providing substantial punishment.

**3.   The Sentencing Range Established by the Sentencing Commission**

Notwithstanding the ACCA, the Presentence Report calculates Charley's sentencing guideline range to be 70-87 months based on his record which, although ancient counts both for base offense level and criminal history purposes because two sentences stretched into later decades as the result of parole revocations. The §2K2.1 guideline evidences the sentencing commission's effort to ratchet up sentences sharply in light of separate, relatively recent crimes of violence or controlled substance offenses.  In Mr. Charley's case, however, two offense committed within one

month of each other more than twenty years ago have the effect of raising his sentence from roughly one year (as a prohibited person) to six and one-half years (as a felon with two prior crimes of violence). Had the two ancient convictions been related and counted as just one crime of violence conviction for base offense level and criminal history purposes, Charley would be facing a guideline range of just 37 to 46 months.

In these circumstances, the guideline should have minimal weight and, in light of the other statutory directives contained in 18 U.S.C. §3553(a), the Court should sentence Charley to 48 months imprisonment.

## CONCLUSION

For the foregoing reasons, this Court should impose a sentence of 48 months imprisonment with a two-year period of supervised release with any additional conditions deemed appropriate by the Probation Department. The Court should impose no fine.

EARL CHARLEY,
By His Attorney:


/s/ Timothy Watkins
Timothy Watkins
 B.B.O. #567992
Federal Defender Office
408 Atlantic Ave., Third Floor
Boston, MA  02210
(617) 223-8061